[Docket No. 66]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

ANTHONY BURKE,

      Plaintiff,

  v.

JOHN POWELL, *et al.*,

      Defendants.

Civil No. 20-1013 (RMB/SAK)

**OPINION**

**APPEARANCES**

Clifford Paul Yannone, Esq.
Starkey Kelly Kenneally Cunningham & Turnbach
Two Hooper Avenue
Toms River, New Jersey 08753

    *On behalf of Plaintiff Anthony Burke*

Eric Intriago, Esq.
Office of the Attorney General for the State of New Jersey
25 Market Street
Trenton, New Jersey 08625

    *On behalf of Defendants John Powell, Wilbert Gaskill, Joshua Hand, and Scott Abele*

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon the filing of a Motion for Summary

Judgment by Defendants Bayside State Prison ("**BSP**") Administrator John Powell,

BSP Corrections Sergeant Wilbert Gaskill, and BSP Corrections Officers Joshua Hand

and Scott Abele (collectively, "**BSP Defendants**"). [Defs.' Mot. Summ. J., Docket

No. 66 ("**MSJ**"); Defs.' Br. Supp. Mot. Summ. J., Docket No. 66-1 ("**Defs.' Br.**");

Defs.' Statement of Material Facts, Docket No. 66-2 ("**Defs.' SOMF**").]  On August 22, 2022, Plaintiff Anthony Burke ("**Plaintiff**") opposed, [Pl.'s Opp'n to MSJ, Docket No. 77 ("**Pl.'s Opp'n**"); Pl.'s Responsive Statement of Material Facts, Docket No. 77-2 ("**Pl.'s RSOMF**"); Pl.'s Suppl. Statement of Material Facts, Docket No. 77-3 ("**Pl.'s SSOMF**")], and the BSP Defendants filed a Reply Brief on August 31, 2022, [Defs.' Reply Br. to Pl.'s Opp'n, Docket No. 83 ("**Defs.' Reply Br.**"); Def.'s Responsive Statement of Material Facts to Pl.'s SSOMF, Docket No. 83-1 ("**Defs.' RSOMF**")].

On January 24, 2023, the Court heard oral argument as to the BSP Defendants' Motion.  [Docket No. 85.]  As a result of that hearing, supplemental briefing was ordered, and all claims asserted against Defendants Powell and Gaskill were dismissed.  [Docket No. 86.]  Officers Hand and Abele are the only BSP Defendants who remain in this action.  [*Id.*]  On February 14, 2023, Plaintiff filed his Supplemental Brief, [Docket No. 89 ("**Pl.'s Suppl. Br.**")], and the remaining BSP Defendants responded on February 27, 2023, [Docket No. 92 ("**Defs.' Suppl. Br.**")].  Having been fully briefed, this matter is now ripe for adjudication.  For the reasons that follow, the Court will **GRANT** the BSP Defendants' Motion for Summary Judgment, **DISMISS** all of Plaintiff's claims against the remaining BSP Defendants, and **CLOSE** this case.

## I.    BACKGROUND

Between November 20, 2017 and February 26, 2018, Plaintiff was incarcerated at BSP in Leesburg, New Jersey.  [Defs.' SOMF ¶ 2.]  At some point, he began working as an informant for the Special Investigations Division ("**SID**") of the New Jersey

Department of Corrections and was assigned to work in the BSP kitchen, [*id.* ¶¶ 3–4], which involved, aside from culinary duties, reporting on illegal activities, such as the smuggling of contraband by BSP officers, [Pl.'s SSOMF ¶ 2]. During his time working at the BSP kitchen, Plaintiff would meet with SID investigators periodically to provide information, including before and after his shifts. [Defs.' SOMF ¶ 7.]

While the parties do not agree that the BSP kitchen is a "relatively large area with many inmates working in food preparation," [*compare* Defs.' SOMF ¶ 5, *with* Pl.'s RSOMF ¶ 5], it is clear that there is a central room, separate side office, supplies chamber, and podium from which officers can supervise inmates, [Defs.' SOMF ¶ 6]. On February 24, 2018, Plaintiff was working alone in the "pots and pans area" of the BSP kitchen. [Pl.'s SSOMF ¶ 8.] BSP Corrections Officers Hand and Abele were stationed at the officers' podium that day. [Defs.' SOMF ¶ 9.] At approximately 7:44 a.m., as recorded by video surveillance, Defendants Sahib Hall and Jerry Jones, two other inmates who were working in the BSP kitchen, approached Plaintiff, and Defendant Jones struck Plaintiff on the face, causing Plaintiff to fall to the ground. [*Id.* ¶¶ 11–13.] Defendant Hall stood by as "back up" and threatened Plaintiff. [Pl.'s SSOMF ¶ 13.] Officers Hand and Abele contend that they did not witness the assault because a desk and trashcan obstructed their line of sight,[1] [Defs.' SOMF ¶¶ 14–16; Defs.' RSOMF ¶ 18], but they were looking in the direction of the "pots and pans area" when the attack occurred. [Pl.'s SSOMF ¶¶ 18–19.] Officer Abele can be seen on

---

[1] Plaintiff suggests that the trashcan was at waist level and did not obstruct their line of sight. [Pl.'s RSOMF ¶ 16.]

camera smiling and/or laughing.  [*Id.* ¶ 22.]  The incident lasted for about five (5) seconds, though Plaintiff contends that Jones and Hall threatened Plaintiff until he was ultimately removed from the BSP Kitchen several minutes later.  [Defs.' SOMF ¶ 18; Pl.'s RSMOF ¶ 18.]

The parties dispute whether Officers Hand and Abele were aware, prior to the incident, that Plaintiff served as an SID informant, [*compare* Defs.' SOMF ¶ 34, *and* Defs.' RSOMF ¶¶ 3–7, *with* Pl.'s RSOMF ¶¶ 31, 34–36, 38, 41, 48, *and* Pl.'s SSOMF ¶¶ 3–7], and they dispute whether Officers Hand and Abele called Plaintiff a "snitch" and disclosed Plaintiff's status as an informant to other kitchen inmates, [*compare* Defs.' SOMF ¶¶ 31, 33–36, *and* Defs.' RSOMF ¶¶ 4–7, *with* Pl.'s RSOMF ¶¶ 31, 33–36, *and* Pl.'s SSOMF ¶¶ 4–7].  Additionally, the parties disagree about whether Officers Hand and Abele directed (a) Defendant Jones to attack Plaintiff and (b) Defendant Hall to stand-by as Jones' "back up."  [*Compare* Pl.'s SSOMF ¶¶ 11, 12, 48–54, *with* Defs.' RSOMF ¶¶ 11, 12, 48–54.]  Plaintiff states that he had witnessed officers assault inmates at BSP prior to February 24, 2018, [Pl.'s SSOMF ¶ 83], but apparently never because they were SID informants, [Defs.' RSOMF ¶ 83].  Defendant Jones, ***who was never ultimately served in this action***, stated in a recorded interview that Officers Hand and Abele told him to "put hands on [Plaintiff]" because he served as an informant, that he had seen officers assault inmates at BSP before, and that he attacked Plaintiff because he was afraid of retaliation for noncompliance.  [Pl.'s SSOMF ¶¶ 49, 51; *id.* ¶ 84 (stating "that's how Bayside operates" and "they don't play fair").]  He also states

4

that Officers Hand and Abele witnessed the assault.   [*Id.* ¶ 50.] Defendant Hall apparently stated that he did not want to return to BSP following the February incident out of fear that he would be "set up."   [*Id.* ¶ 85.]

Immediately after the attack, Plaintiff approached Officers Hand and Abele and requested to leave the BSP kitchen to return to his housing unit and to visit the infirmary.  [Defs.' SOMF ¶ 19; Pl.'s SSOMF ¶ 23.]  Officers Hand and Abele contend that Plaintiff stated that he slipped and fell, and they apparently advised Plaintiff that an accident report was required before he could leave for the infirmary.  [Defs.' SOMF ¶¶ 19–20.]  They state that Officer Abele called Sergeant Gaskill, his supervisor, to request that he bring an accident report to the BSP kitchen because they did not have a blank form on hand.  [*Id.* ¶ 21.]  Plaintiff claims that he did not tell Officers Hand and Abele that he slipped and fell; rather, he asked to be sent to the infirmary.  [*Id.* ¶ 19; Pl.'s RSMOF ¶ 19.] At 7:59 a.m., Officer Abele contacted Sergeant Gaskill, who arrived at the BSP kitchen ten minutes later, without an accident report.  [Pl.'s SSOMF ¶¶ 30, 34; Defs.' SOMF ¶ 22.]

When he arrived, Sergeant Gaskill took Plaintiff into the side office and asked him what had occurred; Plaintiff then reported that he had slipped and fallen.  [Pl.'s SSOMF ¶¶ 35–36; Defs.' SOMF ¶ 22.]  Nevertheless, Sergeant Gaskill and Officer Abele performed a "knuckle check" of three (3) unidentified incarcerated persons (they cannot recall their identities) to determine whether there was a physical altercation. [Defs.' SOMF ¶ 23; Pl.'s SSOMF ¶ 37.]  The knuckle check did not yield any results, so Sergeant Gaskill and Plaintiff departed the BSP kitchen for the medical unit at 8:11

a.m. [Defs.' SOMF ¶ 26; Pl.'s SSOMF ¶ 38.]  There, Plaintiff told a nurse that he had slipped, fallen, and hit his face.  [Defs.' SOMF ¶ 27; Pl.'s SSOMF ¶ 39.]

After escorting Plaintiff to the medical unit, Sergeant Gaskill returned to the BSP kitchen with an accident report for Officer Hand to complete, [Defs.' SOMF ¶ 24; Pl.'s SSOMF ¶ 40], though the report was never located and presumed to be lost, [Defs.' SOMF ¶ 25].  Plaintiff claims that it was never created.  [Pl.'s RSOMF ¶ 25; Pl.'s SSOMF ¶ 41.]

Prior to the incident, on February 16, 2018, Plaintiff was treated for chronic, non-radiating back pain.  [Defs.' SOMF ¶ 28.]  On February 26, 2018, after the incident, Plaintiff was examined and "denied injuries and had no complaints at the time of the exam." [*Id.* ¶ 29.]  He was examined again on March 3, 2018 and indicated that he fell and "hurt [his] left shoulder and [his] neck" but did not indicate that he suffered from any back pain.  [*Id.* ¶ 30.]  Plaintiff suggests that the injuries he sustained were caused as a result of the February incident and necessitated surgery and other treatment, [Pl.'s SSOMF ¶¶ 74–82], and the BSP Defendants contend that Plaintiff's backpain preexisted prior to the incident, [Defs.' RSOMF ¶¶ 74–82].

On January 29, 2020, Plaintiff initiated this action against Defendants Powell, Hand, Abele, and Jones alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and liability for related state law claims.  [Compl., Docket No. 1.]  On February 13, 2021, Plaintiff filed an Amended Complaint, adding Hall and Gaskill as Defendants.  [Am. Compl., Docket No. 25.]  In the Amended Complaint, Plaintiff asserts claims of excessive force, cruel and unusual punishment, failure to intervene,

state-created danger, and failure to protect against Officers Hand and Abele and claims of assault and battery, negligence, intentional and negligent infliction of emotional distress against Jones, Hall, and Officers Hand and Abele.  [*Id.*]  He further asserts a violation of the New Jersey Civil Rights Act ("**NJCRA**"), N.J.S.A. § 10:6–1, *et seq.*, against Officers Hand and Abele.  [*Id.*]  Pursuant to the Court's January 24, 2023 Order, all claims against Defendants Powell and Gaskill were dismissed, so they are not mentioned here.  [Docket No. 86.]

Officers Hand and Abele filed an Answer on April 8, 2021.  [Docket No. 34.] Plaintiff completed service of process at Sahib Hall's residence, but Defendant Hall never filed an answer or otherwise submitted an appearance.  [*See generally* Docket.] On Plaintiff's Motion, an entry of default was entered on September 30, 2021 as to Defendant Hall.  [Docket No. 52.]  On April 28, 2020, Plaintiff notified the Court that he had been unable to locate and serve Defendant Jones.  [Docket No. 9-1.]  As of the date of this Opinion, Plaintiff has not been able to locate and serve Defendant Jones.

## II.   JURISDICTION

This Court exercises subject matter jurisdiction over Plaintiff's constitutional claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3); however, as explained below, see *infra* Sections IV.E., IV.F., the Court declines to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## III.   LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Id.*

In deciding whether there is a disputed issue of material fact, the Court must view all inferences, doubts, and issues of credibility in favor of the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." *Connection Training Servs. v. City of Phila.*, 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." *Id.*

In the face of a properly supported motion for summary judgment, the non-movant's burden is rigorous. The non-movant "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *accord Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) (noting that "speculation and conjecture may not defeat a motion for summary judgment") (citing *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009)).

## IV.   DISCUSSION

The BSP Defendants argue that they are entitled to summary judgment because Plaintiff has not adduced sufficient evidence to establish that Officers Hand and Abele violated Plaintiff's constitutional rights or are otherwise liable for any of the claims asserted against them.   [Defs.' Br. 8–36.]   They advance a number of different arguments, including that Plaintiff has failed to meet the elements of each of his claims and that the BSP Defendants are entitled to sovereign and/or qualified immunity.   [*Id.*] Plaintiff opposes, arguing that the BSP Defendants are not entitled to immunity under either theory and that he has adduced sufficient evidence to meet the elements of each claim.   [Pl.'s Opp'n 8–38.]   He also asserts that the audio recording and handwritten notes of Defendant Jerry Jones are admissible evidence as statements against interest pursuant to Federal Rule of Evidence 804(b)(3) and should be considered in support of his claims.   [*Id.* at 34–38.]   Because genuine factual disputes exist, Plaintiff contends that summary judgment must be precluded.   [*Id.*]

Before addressing Plaintiff's claims with specificity, the Court first considers as a preliminary matter the evidentiary question presented—whether Defendant Jones' statements can be construed as statements against interest under the eponymous hearsay exception.   The Court considers the question presented first because Plaintiff's claims are supported almost entirely by his own testimony and Jones' hearsay statements.   If Jones' statements are not capable of being admissible at trial, then they should not be considered for the purpose of deciding the instant motion.   *See Fraternal Order of Police v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) ("The rule in this

9

circuit is that hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial.") (cleaned up) (emphasis removed) (citations omitted).  The Court's duty, in ruling on the BSP Defendants' Motion for Summary Judgment, is to determine "if the out-of-court statements Plaintiff[] [is] relying on [are] admissible at trial."  *See id.*

Accordingly, in its January 24, 2023 Order, the Court directed the parties to submit supplemental briefing regarding the following issues:

> (a) why inmate Jerry Jones should be considered 'unavailable' pursuant to Fed. R. Evid. 804(a); (b) assuming Jones is unavailable, why Jones' statements should be construed as statements against interest pursuant to Fed. R. Evid 804(b)(3); and (c) assuming that Jones' statements are excluded by the rule prohibiting hearsay, what evidence remains in support of Plaintiff's claims asserted against Officers Hand and Abele.

[Docket No. 8, at 2, ¶ 3.]  Thus, the Court first addresses whether the interview recording and handwritten notes of Defendant Jones should be construed as statements against interest before turning to Plaintiff's claims.

## A.    Jerry Jones' Hearsay Statements.

Under the rule prohibiting hearsay, a statement that a declarant does not make while testifying in court and which a party offers for the truth of the matter asserted is not admissible *unless* a federal statute, the Federal Rules of Evidence, or a rule prescribed by the United States Supreme Court provides otherwise.  FED. R. EVID. 802; *see also* FED. R. EVID 801.  Under certain conditions, a hearsay statement otherwise barred by Rule 802 can be admissible where the declarant is "unavailable." FED. R. EVID. 804.  While there are several circumstances in which a declarant will be

considered "unavailable," under Rule 804(a)(5), a declarant is unavailable if the declarant "is absent from the trial or hearing and ***the statement's proponent*** has not been able, ***by process*** or ***other reasonable means***, to procure: . . . (B) ***the declarant's attendance or testimony***, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4)." FED. R. EVID. 804(a)(5) (emphases added).[2]

The proponent of the statement bears the burden of proving the unavailability of the declarant. *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 165 (3d Cir. 1995) (citations omitted). "If a witness cannot be found, process obviously cannot be effective. The proponent of the hearsay statement must, however, establish that the witness cannot be found." 2 MCCORMICK ON EVID. § 253 (8th ed. 2022). In civil cases, deciding whether efforts have been sufficient to locate a declarant is generally within the sound discretion of the court. *See id.* § 253 n.34 (citing cases). A proponent's unsuccessful efforts to locate a declarant will be considered insufficient unless the proponent (1) "fashioned a multifaceted approach to locate the declarant" and (2) "implemented each of these investigate methods more than once," unless futile. *See Rodriguez v. Hayman*, 2013 WL 1222644, at *2 (D.N.J. 2013) (Kugler, J.) (construing cases in numerous circuits to ascertain a party's burden to demonstrate the unavailability of a declarant due to absence). As the *Hayman* court explained, "the touchstones of

---

[2] The Court intentionally omits the text of Rule 804(a)(5)(A), as Plaintiff seeks to introduce Defendant Jones' statement pursuant to the exception set forth in Rule 804(b)(3). (A) only applies where a proponent offers a statement under Rules 804(b)(1) or (6) and mandates that the proponent prove that he was unable to procure the declarant's attendance, not the declarant's attendance or testimony like in (B). *See* FED. R. EVID. 804(a)(5)(A), (B).

11

'reasonable means' under Rule 804(a)(5) are variation and repetition." *Id.*  "[O]ne unsuccessful attempt to serve a subpoena, one visit to a last known residence, and one set of phone calls to various relatives, taken together, were not enough under the circumstances to establish [the declarant's] unavailability under the meaning of Federal Rule of Evidence 804(a)(5)(B)." *Id.* at *3.  While a proponent's search need not be exhaustive to be reasonable, it should be appropriately thorough in proportion to the importance of the evidence to be introduced. *Cf., e.g.*, *Carpenter v. Dizio*, 506 F. Supp. 1117, 1123 (E.D. Pa. 1981) (finding proponent employed reasonable means to locate "key figure" (an eyewitness) in proponent's case where his attorney sent numerous letters to the declarant's last known address over the course of a year, attempted to call the declarant, personally visited the last known address and questioned a neighbor as to his whereabouts, and visited the declarant's former place of employment).

In the instant case, Plaintiff argues that he employed reasonable means to locate and serve Jones, a named Defendant in this action.  [Pl.'s Suppl. Br. 3–5.]  On February 4, 2020, Plaintiff engaged Guaranteed Subpoena Service LLC to serve process on Jones.  [Certification of Clifford P. Yannone ¶ 3, Docket No. 89-1 ("**Yannone Certif.**").]  At that time, Plaintiff believed Jones was an inmate at Northern State Prison in Newark, New Jersey.  [*Id.*]  Service was attempted on February 6, 2020, but Jones had apparently been paroled.  [*Id.*]  Thereafter, Plaintiff

12

submitted several "skip trace" searches[3] to Spartan Detective Agency, Inc.—on March 13 and 26, 2020, April 17, 2020, February 24, 2021, March 19, 2021, and on or around February 8, 2023. [*Id.* ¶¶ 3, 4, 6, 8, 11–13.] But each failed to locate Jones. [*Id.*] Additionally, Plaintiff used a search engine (*i.e.*, PROMIS/Gavel Public Access) to gather additional identifying information about Jones, and he engaged a private investigator. [*Id.* ¶¶ 5, 7.] However, the investigator's own search apparently resulted in over 40 hits for "Jerry Jones" in New Jersey, which Plaintiff contends, without explanation, was too numerous to be useful. [*Id.* ¶ 5; Pl.'s Suppl. Br. 4.] Finally, in June 2020, Plaintiff apparently "had information to believe [that] Jones was located at the Kintock Group in Newark," but after requesting that Guaranteed Subpoena Service execute service of process on Jones, it was discovered that the Kintock Group no longer existed at the address of record. [Yannone Certif. ¶ 10.] No follow-up investigation was pursued. Plaintiff submits that the foregoing actions establish that Jones should be considered "unavailable." [Pl.'s Suppl. Br. 5.]

While the Court recognizes that Plaintiff attempted to locate Defendant Jones, it concludes that Plaintiff's efforts were not sufficient to demonstrate "reasonable means" to procure Jones' attendance and/or testimony in this action. First, Plaintiff did not employ a "variety of tactics" or fashion a "multifaceted approach" to locate Jones. *See Hayman*, 2013 WL 1222644, at *2. Unlike the proponent in *Carpenter* who

---

[3] A "skip trace" search is a process of locating a person's whereabouts using various informational inputs, such as name, Social Security number, and date of birth, and by consulting property records, social media accounts, criminal history, travel records, tax and financial records, and other publicly and privately available sources.

visited and called the declarant's last known address and questioned a neighbor about the declarant's whereabouts, 506 F. Supp. at 1123, Plaintiff here principally relied on submitting several "skip trace" searches to the same third party, Spartan Detective Agency, who repeatedly could not locate Defendant Jones.  Each report indicated that Spartan Detective Agency needed additional information about Jones, such as his prior addresses and Social Security number, and ultimately, Spartan Detective Agency was not able to locate Jones.  Plaintiff does not appear to have contacted another skip tracer, but rather exclusively relied on Spartan Detective Agency.   Under the circumstances, the Court concludes that such reliance was unreasonable.  Parolees do not simply disappear.  Plaintiff could have contacted Jones' parole officer, worked with the Department of Corrections to gather additional information about Jones' prior life, or located and questioned family members or neighbors.  He also could have contacted law enforcement or published notices in publicly available sources, such as periodicals.  Furthermore, he could have exercised additional diligence to locate the Kintock Group, as it presumably only changed addresses and likely had additional information about Defendant Jones' whereabouts.[4]  In sum, it is clear to the Court that Plaintiff should have employed more varied and thorough investigative methods to locate Jones, especially because he appears to be the linchpin of Plaintiff's case.

The  Court  forms  the  foregoing  conclusion  notwithstanding  Plaintiff's

---

[4] The Kintock Group appears to remain in business, generally and in New Jersey  in  particular.  See  *Locations*,  THE  KINTOCK  GRP., https://www.kintock.org/locations (last visited May 18, 2023).

engagement of a private investigator to locate Defendant Jones.  Under appropriate circumstances, a private investigation can be a valuable tool as part of a "multifaceted approach" to locate a witness or to discover information that can be useful for the purpose of doing so.  *See, e.g.*, *Creamer v. Gen. Teamsters Local Union 326*, 560 F. Supp. 495, 499 (D. Del. 1983) (describing multiple steps taken by proponent to demonstrate inability to procure witness for trial, including contacting investigators at the U.S. Department of Labor); *Young v. Wolfe*, 2017 WL 985634, at *6–7 (C.D. Cal. Mar. 14, 2017) (same, including searching Board of Parole Hearing's website, hiring an investigator, and attempting to contact witness' mother).  Here, however, Plaintiff engaged an investigator who identified 41 different hits for "Jerry Jones" in New Jersey but does not appear to have offered any additional analysis or work product. [Yannone Certif. ¶ 5, Exs. F, G.]  Plaintiff indicates that his search results were too numerous to be useful.  [See Pl.'s Suppl. Br. 4.]  First, the Court fails to understand why 41 results were too numerous to be useful or why he could not winnow the results based on other identifying information gathered about Defendant Jones.  Second, Plaintiff does not appear to have submitted any follow-up requests to the investigator, and the Court is not provided any basis to conclude that the investigator's search was comprehensive like the attorney's search in *Carpenter*.  Third, Plaintiff did not use the search results his private investigator generated to inform or assist his skip tracer or his process server, nor did Plaintiff even attempt to contact any of the persons listed on his investigator's report to confirm whether any was Defendant Jones.  Again, for such a critical witness, Plaintiff should have employed a more thorough investigation with

15

the information identified to locate Jones.  A blanket statement that the investigator's results were too numerous to be useful is insufficient.  Courts expect a proponent to follow through on efforts to locate a declarant.  *See, e.g.*, *Colon v. Porliar*, 2012 WL 3241466, at *2 (N.D.N.Y. Aug. 7, 2012) (concluding that witnesses were not unavailable for the purposes of Rule 804 where plaintiff indicated that process server unsuccessfully searched a New York State Department of Corrections database and sent FOIA requests to the New York State Division of Parole, which remained pending).

Accordingly, the Court concludes that Plaintiff has not demonstrated that he exercised sufficient diligence—"reasonable means"—to serve Defendant Jones and procure his attendance or testimony in this action.  As a result, the Court finds that Defendant Jones is not "unavailable" within the meaning of Federal Rule of Evidence 804(a).  Still, assuming *arguendo* that the Court could conclude that Defendant Jones is "unavailable" within the meaning of Rule 804(a), it would nevertheless find that his recorded audio statements and handwritten notes are not statements against interest.  Defendant Jones' assertions, properly construed, are not contrary to his proprietary, pecuniary, or penal interest.

Statements against interest by an unavailable declarant are excepted from the rule prohibiting hearsay.  Rule 804 defines a statement against interest as follows:

A statement that:

 (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or

> had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B)  is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

FED. R. EVID. 804(b)(3).  To determine whether a statement is made contrary to the declarant's interest, courts must view the statement "in context" and "in light of all the surrounding circumstances."  *Williamson v. United States*, 512 U.S. 594, 603–04 (1994).  Where a statement implicates another person, courts should examine the circumstances to determine whether the statement is "self-inculpatory or self-serving."  *United States v. Moses*, 148 F.3d 277, 280 (3d Cir. 1998).  Moreover, courts should be attentive to the scope of the "statement": only singular self-incriminatory statements are covered by Rule 804(b)(3), rather than an entire narrative that may "mix falsehood with truth."  *Williamson*, 512 U.S. at 599–600 (explaining that the rule supports a narrower reading of "statement" as "a single declaration or remark," rather than "a report or narrative"); *id.* at 600–01 ("[T]he most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made withing a broader narrative that is generally self-inculpatory."); *see also generally* 2 MCCORMICK ON EVID. § 319 (8th ed. 2022).  Where a statement admitting guilt or implicating another person is given in custody, it may be unreliable and fail to qualify under the exception because it is motivated by a "desire to curry favor with the authorities."  FED. R. EVID. 804 cmt.; *see also United States v. Boyce*, 849 F.2d 833, 836 (3d Cir. 1988).

Here, Jones' recorded interview and handwritten notes cannot be construed as statements against interest.  First, the "statement" proffered by Plaintiff is, properly construed, a series of assertions Jones made to SID investigators while in custody five (5) days after he attacked Plaintiff.  Thus, this narrative explanation of the incident that Jones provided cannot be construed as either entirely self-inculpatory or non-self-inculpatory.  *See Williamson*, 512 U.S. at 599–600.  The statements must be considered individually, but in context.

Second, given the surrounding circumstances, the material statements cannot be construed as self-inculpatory.  *See id.* at 601.  The incident was captured on surveillance footage, so investigators already knew that Jones struck Plaintiff.  While questioned by SID investigators, Jones stated that (1) Officers Hand and Abele directed him to strike Plaintiff, (2) Officers Hand and Abele witnessed the assault, and (3) Jones complied because he feared retaliation and had previously seen BSP officers assault inmates.  [Pl.'s SSOMF ¶¶ 48–54.]  He impliedly asserts that Officers Hand and Abele were aware that Plaintiff was an SID informant prior to the date of the incident.  He further identified Plaintiff by writing the word "Rock" next to a photograph of Plaintiff, a moniker inmates used to refer to Plaintiff, and "Back up" next to a photograph of Sahib Hall.  [*Id.* ¶¶ 52–53.]  Each of these assertions are justifications of Jones' actions, and they divert blame to Officers Hand and Abele. Even though Jones acknowledged in the interview that he struck Plaintiff (confirming the footage of the incident), his additional remarks could be used to establish a defense that he acted under duress, as he feared retaliation.  In this way, they are self-serving

assertions (not statements against interest) that should not be introduced as evidence without the traditional safeguards, such as cross examination.

With the foregoing evidentiary issue addressed, the Court proceeds to consider Plaintiff's claims individually, though the Court observes before doing so that all of Plaintiff's claims are premised on his own testimony and Defendant Jones' hearsay statements, which the Court hereby excludes. Thus, the factual issues that Plaintiff highlights in his submissions do not reflect genuine disputes of material fact that precludes summary judgment.

### B. Excessive Force Claim.

In the Amended Complaint, Plaintiff asserts that Officers Hand and Abele applied excessive force in violation of the Fourth and Fourteenth Amendments of the Constitution, for which Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. [Am. Compl. (Count I).] While Plaintiff sets forth his excessive force allegations as a claim under the Fourth and Fourteenth Amendments, in their submissions the parties cite to cases that address excessive force claims in the prison context as Eighth Amendment violations, not Fourth and Fourteenth Amendment violations. Having reviewed the authorities cited by the parties, the Court addresses Plaintiff's excessive force claim as if it were set forth in the context of the Eighth Amendment's protection against cruel and unusual punishment. *See Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (explaining that the Cruel and Unusual Punishment Clause of the Eighth Amendment has been interpreted "to bar prison officials from using excessive force against inmates" and "to impose affirmative duties on prison officials to 'provide humane

conditions of confinement'") (first citing *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992), then quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

To state a cause of action under § 1983, a plaintiff must prove that the defendant (1) acted under color of state law, and (2) deprived the plaintiff of a federal right. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To establish that a prison official inflicted excessive force in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment, the inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 318–19 (1986) (discussing the meaning of the Cruel and Unusual Punishment Clause).

Courts consider the following factors to determine whether a correctional officer used excessive force in violation of the Eighth Amendment: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)).

Here, in support of their Motion for Summary Judgment, the BSP Defendants first argue that Officers Hand and Abele cannot be liable for excessive force because

they, personally, did not use force against Plaintiff.  [Defs.' Br. 10.]  It is undisputed that Defendant Jones struck Plaintiff, and Plaintiff himself concedes that Officers Hand and Abele "did not physically hit" him.  [Defs.' SOMF ¶ 33; Pl.'s RSOMF ¶ .] Rather, Plaintiff alleges that Officers Hand and Abele directed Defendant Jones to assault Plaintiff.  [Pl.'s SSOMF ¶ 10.]  While the Court rejects the BSP Defendants' argument that Officers Hand and Abele must have personally used physical force to be liable under an excessive force claim, as they can be liable for directing a third party to use such force, *see Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995) ("In order to render Armstrong personally liable under section 1983, the Bakers must show that he participated in violating their rights, ***or that he directed others to violate them***, or that he, as the person in charge of the raid, had knowledge of and acquiesced in his subordinates' violations.") (emphasis added), the Court nevertheless finds that there is no genuine dispute that Officers Hand and Abele directed Defendant Jones to attack Plaintiff.  The only evidence in support of that assertion is the hearsay testimony of Defendant Jones.  [See Pl.'s SSOMF ¶¶ 48–54.]  Plaintiff's own testimony merely reproduces Jones' out-of-court assertion that Officers Hand and Abele instructed him to assault Plaintiff, which this Court will not allow as discussed above.  Without Defendant's Jones' presence in this litigation, there is no competent evidence to controvert the testimony of Officers Hand and Abele, who both deny Plaintiff's allegation.  [Defs.' SOMF ¶¶ 31–32, 34–36.]  Therefore, Plaintiff cannot establish that Officers Hand and Abele used force, albeit through Defendant Jones, "maliciously and sadistically to cause harm."  *See Hudson*, 503 U.S. at 6–7; *Smith*, 293 F.3d at 649.

Accordingly, summary judgment is warranted as to Plaintiff's excessive force claim.[5]
*See Celotex*, 477 U.S. at 323–24 ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

### C. Cruel and Unusual Punishment Claim.

Next, the Court addresses Plaintiff's claim that Officers Hand and Abele inflicted cruel and unusual punishment in violation of the Eighth Amendment and for which Plaintiff seeks relief pursuant to § 1983. [Am. Compl. (Count II).] Plaintiff alleges that Officers Hand and Abele were aware that Plaintiff had met with SID before his kitchen shifts, that they were aware he had met with SID the day before the February 24, 2018 incident, and that they called him a "snitch" in front of other inmates. [Pl.'s Supp. Br. 27.] Plaintiff further claims that Officers Hand and Abele exhibited deliberate indifference to a serious risk of harm to Plaintiff by disclosing his status as an SID informant, watching Defendant Jones assault Plaintiff at their direction, and failing to remove Plaintiff from the kitchen, a "dangerous situation," for the next 27 minutes thereafter. [*Id.* at 27–28.]

To prevail on a claim under the Cruel and Unusual Punishment Clause, an inmate must show that (1) he suffered a "sufficiently serious" harm and (2) that the prison official was deliberately indifferent to the inmate's health or safety. *Farmer v.*

---

[5] Because the Court concludes that Plaintiff has failed to adduce sufficient evidence to set forth a *prima facie* case as to his excessive force claim, the Court need not address the BSP Defendants' argument that Officers Hand and Abele are entitled to qualified immunity on each of Plaintiff's claims under 42 U.S.C. § 1983. [See Defs.' Br. 34–36.]

*Brennan*, 511 U.S. 825, 834 (1994).  Where a claim is based on the prison official's failure to prevent harm, "the inmate must show that he is incarcerated under conditions posing a substantial risk of harm." *Id.*  The "deliberate indifference" standard under *Farmer* is subjective, meaning that the prison official "must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125, 133 (3d Cir. 2001).

Here, summary judgment must be granted as to Plaintiff's cruel and unusual punishment claim because Plaintiff has not adduced sufficient evidence to establish that Officers Hand and Abele were deliberately indifferent to an excessive risk of harm to Plaintiff.  While Plaintiff alleges that Officers Hand and Abele told other inmates that Plaintiff was a "snitch," Plaintiff concedes that he never personally witnessed them doing so, [Defs.' SOMF ¶ 31], and Officers Hand and Abele dispute that they ever did so as well, [*id.* ¶¶ 34–36].  Aside from the hearsay statements of Defendant Jones, there is no record evidence to support the allegation that Officers Hand and Abele told other inmates Plaintiff was a "snitch."  Plaintiff's cites to no competent evidence to support the assertion.  [See Pl.'s RSOMF ¶¶ 34–36 (citing Intriago Decl., Docket No. 66-3, Exs. AB (Pl.'s Dep.), AI (Def. Jerry Jones Interview), AM (Pl. Interview), D (SID Rep.); Yannone Decl., Docket No. 78, Exs. A (John Kline SID Dep.), E (BSP Informant Log)).]  Though the acknowledgment of Officer Abele that he was aware Plaintiff met with SID the day before the incident is perhaps some evidence that Officer Abele actually knew he was an informant prior to February 24, 2018, the evidence does not establish culpable conduct, *i.e.*, that Officer Abele told

other inmates that he was a "snitch," thereby demonstrating awareness of an excessive risk to Plaintiff's safety.  *See Beers-Capitol*, 256 F.3d at 125, 133.  There is no record evidence to suggest that either Officer Hand or Officer Abele directed anyone to attack Plaintiff or told other inmates that Plaintiff was an SID informant.  Without competent evidence to support the proposition that Officers Hand and Abele disclosed Plaintiff's status as an informant (and thereby *created* an excessive risk that Plaintiff would be harmed), Plaintiff cannot support his claim that they were deliberately indifferent to a risk of harm to his safety.

Moreover, Plaintiff has failed to adduce sufficient evidence to support his theory that Officers Hand and Abele were deliberately indifferent to his safety by failing to remove him from the kitchen after the incident occurred.  Even if the Court were to determine that the factual dispute regarding whether Officers Hand and Abele witnessed the five-second assault is genuine, the Court nevertheless concludes that Plaintiff has not shown that Officers Hand and Abele created an excessive risk to Plaintiff's safety by failing to segregate him from Defendants Jones and Hall when Plaintiff approached the officers' podium requesting to be sent to the infirmary. Plaintiff has not adduced any evidence to demonstrate that he was subjected to an excessive risk to his safety while in the presence of the Officers; he only asserts that an excessive risk persisted.  As a result, he cannot establish that Officers Hand and Abele violated the Cruel and Unusual Punishment Clause of the Eighth Amendment.  *See Farmer*, 511 U.S. at 834.  Accordingly, Plaintiff's claim fails, and summary judgment

is warranted.[6]  *See Celotex*, 477 U.S. at 323–24.

### D.    Failure to Intervene, State-Created Danger, and Failure to Protect Claims.

Plaintiff also argues that Officers Hand and Abele violated his Fourth and Fourteenth Amendment rights by failing to intervene in the assault on Plaintiff by Defendants Jones and Hall, for which he contends they are liable pursuant to § 1983.[7] [Am. Compl. (Count III).]  Relatedly, Plaintiff asserts that Officers Hand and Abele are liable pursuant to § 1983 for a state-created danger—disclosing his status as an SID informant—which resulted in the February 24, 2018 incident, [*id.* (Count V)], and he claims that Officers Hand and Abele violated his constitutional rights by failing to protect him from the assault, [*id.* (Count VI)].  Though pled as independent claims, they are all premised on the same theory: Officers Hand and Abele told inmates Plaintiff was a "snitch," they witnessed Defendants Jones and Hall attack Plaintiff, and they failed to intervene and protect Plaintiff—both before the incident occurred and afterwards, when Plaintiff approached them to seek medical care.  Based on the undisputed facts of record, Plaintiff's claims must fail.

"[A] corrections officer's failure to intervene in a beating can be the basis of

---

[6] As before, the Court need not address the BSP Defendants' argument that Officers Hand and Abele are entitled to qualified immunity.  See *supra* note 5.

[7] Again, the Court assumes that Plaintiff is mistaken and meant to plead an Eighth Amendment violation as to his failure to intervene and failure to protect claims, as he cites to only Eighth Amendment cases in support.  [See Pl.'s Opp'n 14–16, 20–26; Pl.'s Supp. Br. 28–35.]  As the below analysis makes clear, such claims ordinarily proceed under the Eighth Amendment, not the Fourth Amendment, in the prisoner litigation context.

liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith*, 293 F.3d at 650.  For a corrections officer to have a realistic and reasonable opportunity to intervene where an inmate is attacked, the beating must occur within the officer's presence or be within his knowledge, and the officer must have had sufficient time to intervene.  *See id.* at 651 (citing cases).  A "momentary" incident, brief by its very nature, provides no reasonable opportunity for a corrections officer to intervene.  *See El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020) (granting summary judgment as to failure to intervene claim where use of force occurred "within a matter of roughly five seconds," which was not sufficient time for the officer to intervene even when stood next to the victim) (citing *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018)).

In support of his failure to intervene claim, Plaintiff argues that Officers Hand and Abele had a reasonable opportunity to intervene during the incident because they allegedly witnessed the attack with a clear line of sight, and they chose to remain at the officers' podium, smiling and laughing.  [Pl.'s Supp. Br. 29.]  They also submit that the incident took place over the course of 27 minutes because Plaintiff was not separated from his attackers immediately after approaching Officers Hand and Abele.  [*Id.* at 30.]  Even if this Court were to conclude that the factual dispute regarding the Officers' contemporaneous perception of the incident is genuine, see also *supra* Section IV.C., the Court cannot find that they had a reasonable opportunity to intervene.  It is undisputed that the use of force lasted all of five (5) seconds, [Defs.' SOMF ¶¶ 17, 18], and Officers Hand and Abele were not within a close distance of Plaintiff in any case,

26

[*see id.* ¶ 19].  Plaintiff also did not report that he had been attacked.  [*Id.* ¶¶ 19, 20; Pl.'s RSOMF ¶ 19.]   Accordingly, based on the undisputed facts, the use of force by Defendant Jones was momentary, and there was not sufficient time for Officers Hand and Abele to intervene.  *See El*, 975 F.3d at 335–36 ("Given the speed with which the incident ended, no reasonable jury could conclude that [the officer] had a realistic and reasonable opportunity to intervene.").  Nor was there anything for them to intervene in after Plaintiff approached the officers' podium.  *See id.* at 336 (rejecting argument that incident lasted about twenty minutes, not five seconds, because the "question is not whether [the officer] had an opportunity to intervene in the 'entire incident,' but in [the other officer's] use of force, which lasted about five seconds").  Therefore, Plaintiff's failure to intervene claim fails.

Plaintiff's state-created danger claim also must fail.  Under the state-created danger exception to the general rule that the Due Process Clause of the Fourteenth Amendment does not impose an affirmative duty upon the state to protect citizens, "liability may attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Stanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006) (per curiam) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996), and *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003)).  To prevail, a plaintiff must prove the following elements:

(1)   the harm ultimately caused was foreseeable and fairly direct;

> (2)   a state actor acted with a degree of culpability that shocks the conscience;
>
> (3)   a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4)   a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* at 304–05 (citations omitted).

Here, Plaintiff's state-created danger claim fails because he has not adduced sufficient evidence to establish that Defendant Jones' assault was foreseeable or that Officers Hand and Abele acted in any way to create a danger for Plaintiff, much less act in such a way that "shocks the conscience."  This is, at minimum, because Plaintiff has not established by competent evidence that Officers Hand and Abele disclosed his status as an SID informant.  Accordingly, no reasonable jury could conclude that Officers Hand and Abele caused the assault on Plaintiff, that the assault was reasonably foreseeable, or that the Officers' action or inaction "shocks the conscience."  *See Stanford*, 456 F.3d at 310–12 (explaining that a school grief counselor's failure to report a student's suicidal ideations was not shocking given context of student's written note, and that student's death was not reasonably foreseeable or caused by counselor's inaction).

Finally, Plaintiff's failure to protect claim is duplicative of his other claims and must be dismissed as a result.  He contends that Officers Hand and Abele knew that

Plaintiff was an SID informant, that they disclosed this status to other inmates, that they witnessed Defendant Jones' assault, and that they failed to protect Plaintiff. [Pl.'s Supp. Br. 34.]  He argues that this conduct demonstrates the Officers' "deliberate indifference" to an "excessive risk" to his safety. [*Id.* at 34–35.]  But this claim is in no way meaningfully different from his cruel and unusual punishment / conditions of confinement claim, nor his failure to intervene / state-created danger claims. Accordingly, summary judgment is warranted, and his failure to protect claim must be dismissed.  *See Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 132 (D.N.J. 2017) (dismissing counts as duplicative where they were premised on the same allegations and underlying facts as other claims).

In sum, for the foregoing reasons, summary judgment is warranted as to Plaintiff's failure to intervene, state-created danger, and failure to protect claims.[8]

### E.    State Law Claims.

Next, the Court addresses Plaintiff's state law claims.  In the Amended Complaint, Plaintiff asserts claims for assault and battery, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. [Am. Compl. (Counts VII–X).]  He also asserts a claim under the NJCRA, N.J. Stat. Ann. § 10:6–1, *et seq.*  [*Id.* (Count XI).]  Because the Court has concluded that Plaintiff's federal constitutional claims must be dismissed and because such claims are the sole basis for the Court's exercise of federal question jurisdiction over this matter, the Court

---

[8] Again, the Court need not address the BSP Defendants' argument that Officers Hand and Abele are entitled to qualified immunity.  See *supra* note 5.

will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367(c)(3) (providing that district courts may decline to exercise supplemental jurisdiction over related state law claims where "the district court has dismissed all claims over which it has original jurisdiction"); *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017) (citing *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 174 (3d Cir. 2009)).  Thus, the Court dismisses Plaintiff's state law claims for lack on jurisdictional grounds.

### F.    Claims Against the John Doe Defendants, Jones, and Hall.

"The case law is clear that '[f]ictitious parties must eventually be dismissed, if discovery yields no identities[.]'" *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998) (quoting *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D. Pa. 1990)). The discovery period has expired, and it has been over two years since Plaintiff filed his amended complaint. The Court will grant summary judgment as to all claims asserted against the John Doe Defendants.  Therefore, it is appropriate, at this time, to dismiss the claims against the John Doe Defendants pursuant to Federal Rule of Civil Procedure 21.  *See Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250–51 (3d Cir. 2009) (explaining that district court may, at any time, add or drop a party on just terms).

Additionally, the Court concludes that Plaintiff has abandoned his claims against Defendants Jones and Hall.  As recounted above, see *supra* Section IV.A, Plaintiff failed to serve Defendant Jones, and while an entry of default was entered against Defendant Hall on September 30, 2021, Plaintiff has taken no further action to

prosecute his claims against Hall.  In any case, because the Court will grant summary judgment in favor of the BSP Defendants as to Plaintiff's federal constitutional claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims asserted against Defendants Jones and Hall.  *See* 28 U.S.C. § 1367(c)(3); see also *supra* Section IV.E.  Therefore, the Court will dismiss such claims.

## V.    CONCLUSION

For the foregoing reasons, the BSP Defendants' Motion for Summary Judgment will be **GRANTED**.  An accompanying Order shall issue on today's date.

**May 18, 2023**
Date

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge